IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**

**ARTHUR M. HAWKINS,**

**Defendant.**                                                      **No. 01-CR-30006-DRH**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

  The Court has before it, on limited remand pursuant to the Seventh Circuit's practice announced in ***United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005)**, an opportunity to consider whether it would have imposed a different sentence than the sentence of one hundred and twenty months previously imposed when the Sentencing Guidelines were considered by all to be mandatory.  Counsel for each party have thoroughly briefed this matter, the Court has reread the transcript from the December 19, 2002 sentencing hearing, reviewed the presentence investigation report and, importantly for the Defendant, the Court has reread the

many, many letters it received in support of the character of the Defendant.[1]  Given this full review, the Court does not require oral argument.

For the reasons set out below, the Court would not have sentenced Defendant to a different sentence had it considered the Guidelines as advisory rather than mandatory.

First, a word about the Court's comments during the sentencing hearing. The Defendant now suggests that the Court was constrained in leniency by the guidelines in the Court's comments regarding how little discretion the Court is given by those Guidelines.  Obviously, different judges handle these matters in a variety of ways in order to explain to persons less experienced in the intricacies of Guideline policies.  As all judges, this judge appreciates the time and trouble that the writers of letters take in trying to explain the character of the Defendant to the Court. Unfortunately, it is obvious from reading many of such letters that such Guideline novices have unreasonable expectations regarding what a sentence can be.  For example, it is not unusual for a writer, particularly a relative, to express the opinion that the Defendant has learned from his mistake, paid a sufficiently heavy price due to his humiliation in the community and so prison is not necessary and won't the Court please send him home after the hearing.  Consequently, in the days of mandatory Guidelines, the Court was able to explain to those writers of such unreasonable letters that their loved one or friend was not going home, in part,

---

[1] Even to this date, the Court has rarely received as many letters as it did for this Defendant.

because that was beyond the Court's discretion. That certainly was the purpose of the comments upon which the Defendant at bar seized to suggest that this Court perhaps was considering something less than a Guideline type sentence. Of course, one must remember in this case that the Guideline calculations actually exceeded the statutory maximums and the Defendant was sentenced pursuant to the statutory maximums. In fact, the Court stated, "By virtue of the combination of the guidelines and the statutory maximum, the combination of the two really call for only one particular sentence, and I think Mr. Hawkins is already aware of that." (Sent. TR. p. 152).

The Defendant moved for a downward departure at the sentencing hearing but that motion was denied. In so deciding, the Court found that it had the discretion to make a downward departure but refused to exercise its discretion to do so.

Analyzing the sentence for reasonableness within the confines of **18 U.S.C. §3553(a)** does not change the result.

First, the Court looks at the nature and circumstances of the offense and the history and characteristics of the Defendant. The crime was national in scope. Financially, it only affected one victim and that was a party who executed a diversion agreement to avoid criminal prosecution and so one might argue that we are strained to feel too sorry for such a "victim." The Defendant makes much of the "fact" that no consumers were financially at risk as a result of this criminal endeavor. However, we apparently must be reminded that this case involved placing bad consumer car

batteries into the stream of commerce. While it is true that Sears made good on the consumer warranties and Exide worked out an agreement with Sears. Is it speculation or a stretch to understand how the consumers became aware that they had a warranty claim regarding their Die Hard Battery™ with Sears. How many mothers with babies were stranded who knows where and in what weather conditions with a dead battery? How many people were late to work? How many production hours were lost to the American economy as a result? The inferences of this scheme to stick the consumers with defective batteries is limitless. So, to suggest that there were no reports of consumer losses may be technically correct, but only because no one made an effort to collect the thousands of hardship stories or to perform the economic analysis of the harm done to productivity. In this respect, one could argue that the enhancements applied by the use of the Guidelines hardly could cover the wrongs committed by this Defendant. But to do so, would invite speculation since the Guidelines do require more specificity than that. The specifics utilized in making the Guideline calculation certainly adequately address the nature and circumstances of the offense at bar.

    As for the character of the Defendant, while it is true the Court received and took into account many letters attesting to his character both professionally and personally, the Court also heard sworn testimony during the trial regarding the brutal manner in which Defendant ran his business. The old adage, "my way or the highway," comes to mind, except that his way was damaging and criminal and he brought down other people who likely would not have ever considered committing

crimes without his imposing and brutal manner. Unfortunately for the Defendant and all the good the letters point out that he had done, his actions at Exide far outweigh and exceed those good deeds. One wonders about the motivation for those good deeds as will be analyzed below. The Guideline calculation is an appropriate means to address the characteristics of this Defendant as demonstrated by his criminal activity.

The need to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense are all addressed by the calculation of the Guideline and the policy considerations that went into those calculations. The Defendant has aptly pointed out that a number of enhancements were applied. However, all the enhancements were based on evidence which the Court heard during this three month trial. This was an intricate scheme. However, aside from the scheme itself, the Court heard evidence of other acts intertwined within the criminal scheme at bar, as well as **FEDERAL RULE OF EVIDENCE 404(b)** material which demonstrated that this Defendant had little respect for the law. His respect was focused on himself and what people thought of him. Whether that was his board and his shareholders because of the bottom line he was able to produce, or some more charitable front he was putting up in other areas for people to form a certain opinion about him. Likely, in case his criminal and other dastardly deeds should come to light. The Guideline calculation seems to adequately impose just punishment and promote a respect for the law on one who had little concern for it before.

In order to afford an adequate deterrence to criminal conduct, the Court should send a significant message to this Defendant and the business community at large that defrauding the public will be addressed by the courts objectively and seriously, as well as with the message that one must not repeat his deed or the observer looking on must not consider a like endeavor.  One hundred and twenty months sounds like a lot of prison time, even when talking about the need for substantial deterrence given the scope of this nation wide consumer fraud.  This case arose at a time when there seemed to be a multitude of corporate scandals in the news.  It seemed that corporate officers of the thinking possessed by Arthur Hawkins felt that the bottom line was more important than the law and white collar criminals, if they were ever prosecuted, were not dealt with too harshly.  Besides everybody knows the best defense to any criminal charge is a large checkbook.  To its credit, the government chose not to let that attitude prevail.  There is a message to be sent.  However, in analyzing this sentence one must remember that this Court did not upward depart to send a "message."  The Court did not even end up sentencing within the Guideline range, due to the statutory maximums.  The Guideline calculations, in their infinite, albeit cold, wisdom, merely considered a minimal base offense level (six), added on a specific offense level due to a million and half dollar loss (twelve), as well as a specific offense level for the national advertising aspect of the scheme (two) and its intricate nature (two), added four levels because he was the leader (his way or the highway), added two more levels for abuse his private trust given his corporate position, added to his prison time because he paid somebody to

lie under oath (two) and acknowledged that he failed to accept responsibility, thereby failed to reward him with a three level credit. So, the Court would submit that it is only in the abstract of the various policy considerations of the Sentencing Commission where one could argue that this sentence really even constitutes a message.

The need to protect the public is clear. A business man like Arthur Hawkins performing in the manner displayed in this case, on any scale, would be a danger to the public. His attitude of profit over the interests of the consumer are devastating when he utilizes his obvious intelligence for schemes to avoid detection. One must not forget that this is the man that bribed the company that did testing for <u>Consumer Reports</u> to make his company's battery appear better in its report than it really was in order to fool America's consumers. It would seem that the Guideline calculation adequately addresses this issue as well.

Providing the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner would appear to be factors of little value to the Court's consideration in this case, except that the Defendant clearly needs imprisonment rather than some alternative thereto. His age and experience suggests that the Court need not be concerned with educational or vocational matters. He is quite wealthy and when he is released from prison, he need not worry about employment. No health matters were brought to the Court's attention, particularly not anything that the prison bureau's health care system could not provide for. Mr. Hawkins suggested to the Court that his family

history was such that he would not survive the length of this prison term. That, of course, is rank speculation and he did not provide any medical records to suggest he had particular health concerns to back up his suggestion.

As to the kinds of sentences available, in light of the advisory nature of the Guidelines, probation is statutorily available for a period of one to five years as to each count. However, given the devastation visited upon the nation and the people that Hawkins drug into his criminal acts and who took a fall because of him, it would be a travesty if this Court were to place him on probation rather than the prison sentence that has already been imposed on him.

The Court is to consider the policies and calculations of the Sentencing Commissions and the Guidelines issues by the Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. As the Court has pointed out throughout this analysis, the Court has determined that the Guideline calculations best address all of the issues in this case. They do so from the standpoint of dispassionately considering the issues that arose in the evidence at trial, as well as avoiding a disparity between this Defendant's sentence and a like defendant's elsewhere.

This Court is quite confident in his finding that the consecutive sentence of sixty months as to each of Counts one and two for a total of one hundred and twenty months is appropriate and reasonable as the statutory maximum in light of the fact that the Guideline advisory sentence actually exceeds that total maximum. Therefore, in answer to the inquiry of the Seventh Circuit Court of Appeals, this

Court would not choose a different sentence in light of the new information that the Guidelines are now advisory.

**IT IS SO ORDERED.**

Signed this 22nd day of June, 2005.

<u>/s/     David RHerndon</u>
**United States District Judge**